# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD D. TAYLOR, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, | : | No. 17-4035 |
| Defendant. | : | |

## MEMORANDUM OPINION

**Timothy R. Rice**  December 6, 2019
**U.S. Magistrate Judge**

Plaintiff Donald D. Taylor alleges that Defendant Southeastern Pennsylvania Transportation Authority (SEPTA) is liable for race and disability discrimination, hostile work environment, and retaliation, in violation of Title VII of the Civil Rights Act of 1963, the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (ADA), and the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. (PHRA).[1] See Compl. (doc. 5). SEPTA has moved for summary judgment. See S.J. Mot. (doc. 33)

SEPTA's motion is granted. Taylor has agreed to withdraw his claims for race discrimination, hostile work environment, and retaliation under Title VII. See Taylor Am. Br. (doc. 35) at 8. Taylor also asserts that he is not pursuing hostile work environment and retaliation claims under the ADA. See id. Taylor's only remaining claim is that SEPTA discriminated against him based on his disability in violation of the ADA and PHRA. See id. SEPTA's motion for summary judgment is granted because Taylor has failed to present

---

[1] Taylor filed his complaint pro se. Although Taylor was later appointed counsel, he did not file an amended complaint.

sufficient evidence to enable a jury to reasonably find that SEPTA discriminated against him based on his disability.

## I. Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence and any inferences from the evidence must be viewed in the light most favorable to the non-moving party. See Ray v. Warren, 626 F.2d 170, 173 (3d Cir. 2010). If reasonable minds could conclude that there are sufficient facts to support a plaintiff's claims, summary judgment should be denied. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It should be granted if no "reasonable jury could return a verdict for the nonmoving party" based on the record. Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010).

## II. Facts Most Favorable to Taylor

Taylor was born without his left hand and a portion of his arm below his left elbow. Resp. to SEPTA Facts (doc. 34-1) ¶ 1. In November 2005, SEPTA hired Taylor as a bus operator and, the following year, Taylor was assigned to operate buses and trollies in SEPTA's Victory District. Id. ¶ 2. Taylor was physically capable of driving the buses and trollies; he used a special steering wheel attachment when driving the buses. Id. ¶ 4; S.J. Mot., Ex. A, Taylor Dep. at 252-53.

Because Taylor was a member of the union for SEPTA bus/trolley operators, his employment was governed by a collective bargaining agreement (the CBA), which required the following steps of progressive discipline: (1) documented verbal warning; (2) written warning; (3) one-day administrative suspension; (4) three-day suspension; and (5) discharge. Resp. to SEPTA Facts ¶¶ 6-8; S.J. Mot., Ex. B, CBA, Art. 34, § 1. Union employees could grieve

disciplinary decisions through their union representative. Resp. to SEPTA Facts ¶ 10; CBA, Art. 34 § 12.

Although Taylor was disciplined several times during his eleven years at SEPTA, he bases his discrimination claim on SEPTA's decision to discharge him in September 2016 following an August 2016 trolley derailment.[2] See Taylor Am. Br. at 8. At the time of the derailment, Taylor was serving a "last chance" one-year probationary period for an unrelated incident. See Resp. to SEPTA Facts ¶¶ 66-69. If Taylor committed "any infraction for which discipline [was justified during that probationary period], he [would] be subject to an immediate discharge." Id. ¶ 69; S.J. Mot., Ex. V, 12/1/2015 Last Chance Agreement.

On August 19, 2016, Taylor stopped his trolley car at a platform at 69th Street Terminal when he noticed that another trolley car was stalled on a hill and causing a backup of trolley cars and buses. Resp. to SEPTA Facts ¶ 71; Taylor Dep. at 202-04. Although Taylor had completed his shift, he went to help the driver of the stalled trolley car, Dean Fear. Resp. to SEPTA Facts

---

[2] Taylor states he is not challenging conduct by SEPTA that occurred more than 300 days before he filed his claim with the Equal Employment Opportunity Commission (EEOC), or before April 14, 2016. See Resp. to S.J. Mot. at 8; see also Resp. to SEPTA Facts ¶ 91 (Taylor filed EEOC intake questionnaire on February 8, 2017); see also 42 U.S.C. § 2000e-5(e)(1) (plaintiff must file EEOC charge within 300 days "after the alleged unlawful employment practice occurred"). However, he also seems to rely on disciplinary actions taken by SEPTA in July 2014 and December 2015. See Resp. to S.J. Mot. at 3; Resp. to SEPTA Facts ¶¶ 49-55, 60-69. Because those discrete acts occurred more than 300 days before he filed his EEOC claim, he is not entitled to challenge them as discrete discriminatory acts. See Nat'l R.R. Pass. Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"); O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) (discrete acts for which the limitations period runs include wrongful suspensions and disciplines); 42 U.S.C. § 2000e-2(a) (unlawful employment practices include discriminatory acts that alter compensation, terms, conditions, or privileges of employment). The July 2014 and December 2015 disciplinary actions may only constitute "background evidence" to support Taylor's claim that SEPTA discriminated against him by firing him in September 2016. Morgan, 536 U.S. at 113; cf. Fed. R. Evid. 404(b).

3

¶¶ 72, 73; Taylor Dep. at 203-05. Taylor and Fear attempted to troubleshoot the stalled trolley car without success. Taylor Dep. at 205-06.

Taylor and Fear then decided to couple the stalled trolley car to a working trolley car and attempt to pull the stalled car. Taylor Dep. at 206-09. A SEPTA supervisor, Claudette Powell, and another operator, Harvey Shaw, assisted Taylor and Fear. Id. at 209-11. After Taylor drove the working trolley car to the stalled car, Fear coupled the cars. Id. at 210-11. Powell and Shaw both gave Taylor the signal to proceed with the two attached cars, but as Taylor drove through the trolley switch, the stalled car derailed. Id. at 213-15. Powell told Taylor it was not his fault and she would get him out of any trouble as best as she could. Id. at 215-16. Powell, however, later reported to SEPTA that she arrived after the trolley car had derailed. Taylor Dep. at 219.

Several days later, Taylor and his union representative met with his division director, Jim Schrig, about the incident. Id. at 218-19. Schrig told Taylor that his "good deed turned out to be a bad thing." Id. at 219. Schrig charged Taylor with violating Rail Division Rule-50, which required employees to know the position of switches before using or traversing them, and immediately discharged him for this violation based on his last-chance probationary period. Id. at 219-20; Taylor Ex. 5, Schrig Dep. at 40, 49; Resp. to SEPTA Facts ¶ 76; S.J. Mot., Ex. X, 9/12/2016 Formal Hrg. Decision.

SEPTA also disciplined Fear and Shaw for violating Rule-50 by giving them written warnings. Resp. to SEPTA Facts ¶ 76. At the time of the derailment, Fear had already received a verbal warning for an incident the previous year so the next progressive step under the CBA was a written warning. See SEPTA Ex. Z, Fear Performance Rec.; CBA, Art. 34, § 1. Although

Shaw had a clear performance record at the time of the derailment,[3] Schrig testified that he skipped over the step of a verbal warning and gave Shaw a written warning because the incident was a serious safety violation. See Schrig Dep. at 38-39; S.J. Mot. Ex. Z, Shaw Performance Rec. Supervisor Powell was not disciplined. Schrig Dep. at 29.

The union grieved Taylor's discharge and asserted he was "attempting to assist because trolleys were backed up into the street" and that "other operators also missed the fact the switch was not set for the move." S.J. Mot., Ex. Y, 10/13/2016 Letter; Resp. to SEPTA Facts ¶ 79. SEPTA denied the grievance, stating "[d]espite what other employees did, or didn't do, during this incident, Mr. Taylor was responsible to make sure the switch was properly set before moving the vehicles." 10/13/2016 Letter. SEPTA also found the discharge was appropriate based on the terms of the last-chance probationary period. Id. The union declined to seek arbitration as requested by Taylor. Resp. to SEPTA Facts ¶ 79.

## III. Discussion

SEPTA argues that Taylor has failed to show it discharged him because of his disability.

To establish a prima facie case of discrimination under the ADA and PHRA, Taylor must show that he: (1) is disabled under the meanings of the acts; (2) is qualified to perform the essential functions of the pertinent job, with or without reasonable accommodations; and (3) was subject to an adverse employment action as a result of discrimination related to his disability. See 42 U.S.C. § 12112(a); 43 P.S. § 955(a); see also Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999); Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (PHRA claims are analyzed in same manner as ADA claims). Taylor may establish the third prong by showing

---

[3] Shaw's record noted several attendance violations, but such violations are treated differently in determining disciplinary steps under the CBA. See Shaw's Performance Record; S.J. Mot., Ex. CC, CBA at 100-04.

5

SEPTA treated a non-disabled, similarly situated employee more favorably. See E.E.O.C. v. Metal Serv. Co., 892 F.2d 341, 347 (3d Cir. 1990). Taylor must establish that non-disabled employees "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Anderson v. Haverford Coll., 868 F. Supp. 741, 745 (E.D. Pa. 1994) (citing Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)); see also Taylor-Bray v. Delaware Dep't of Serv. for Children, et al., 627 F. App'x 79, 82 (3d Cir. 2015) (plaintiff must show substantial similarity to comparator).

If Taylor establishes a prima facie case, "an inference of discriminatory motive arises and the burden shifts to [SEPTA] to articulate a legitimate, non-discriminatory reason for the adverse employment action." Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993)). "If [SEPTA] does so, the inference of discrimination drops and the burden shifts back to [Taylor] to show that the defendant's proffered reason is merely a pretext for intentional discrimination." Id.

Taylor contends he has presented sufficient evidence for a reasonable jury to infer that he was discriminated against because of his disability. First, he argues that SEPTA improperly placed him on a last-chance one-year probationary period in December 2015 because it failed to abide by the progressive steps of discipline set forth in the CBA. See Taylor Am. Br. at 3, 11; Resp. to SEPTA Facts ¶ 63. Taylor explains that in July 2014, SEPTA erroneously skipped progressive disciplinary steps by giving him both a one-day administrative suspension and a three-day suspension for violations that happened during the same incident.[4] See id. Taylor

---

4    SEPTA gave Taylor the two separate suspensions for his conduct immediately following a November 2013 trolley car accident. See Resp. to SEPTA Facts ¶ 52. SEPTA gave Taylor the

6

asserts SEPTA then improperly moved to the next disciplinary step of putting him on the last-chance one-year probationary period when he was involved in an incident in 2015.[5]  See id. However, two SEPTA directors, Schrig and John Reynolds, testified that SEPTA had a practice of skipping steps for disciplinary matters.  See Schrig Dep. at 39; Reynolds Dep. at 21.  SEPTA also did not necessarily skip steps in providing Taylor with two separate disciplines in July 2014 because he had two separate violations.  See Resp. to SEPTA Facts ¶ 52; Taylor Dep. at 150-53. Regardless, Taylor cannot challenge either his July 2014 suspensions or his December 2015 placement on the one-year probationary period as discriminatory because he failed to file a timely complaint concerning these alleged unlawful employment practices with the EEOC.  See supra n.2; Morgan, 536 U.S. at 113.

Even if Taylor could challenge his suspensions and placement on the one-year probationary period, Taylor has admitted that he was not aware of any facts or circumstances suggesting that his supervisors were motivated by his disability in the disciplinary process that led to his probationary period.  See Taylor Dep. at 183-84, 195.  He also has not identified any similarly situated non-disabled employees who were engaged in substantially similar conduct but treated more favorably than him.  Although Taylor testified that he knew of another SEPTA

---

one-day suspension for driving away from the accident with his dashboard covered and the three-day suspension for using his cell phone to report the accident.  See id.; Taylor Dep. at 150-53. Taylor grieved the suspensions through his union but, ultimately, the union accepted the discipline.  Taylor Dep. at 156-58.

[5]     In 2015, SEPTA charged Taylor with violating SEPTA work rules by using his cell phone while on a stopped trolley car after a supervisor informed him that his conduct violated SEPTA rules.  See Resp. to SEPTA Facts ¶¶ 60-62.  Because SEPTA had already given Taylor one-day and three-day suspensions in July 2014, it took the next disciplinary step of discharging Taylor with dignity for his 2015 cell phone violation.  See id. ¶ 63.  SEPTA then agreed to a Last Chance Agreement, which allowed Taylor to return to work on a last-chance, one-year probationary period.  See id. ¶¶ 66-67.

7

operator who had operated a train in an unsafe manner, he did not know whether the operator had been disciplined or why he did or did not receive discipline. See id. at 155-56. Taylor merely believed the operator had not been disciplined because he could not recall the operator missing any work after the incident. See id. This does not establish that the operator avoided discipline, which could have included a verbal or written warning. See CBA, Art. 34, § 1. Further, Taylor admitted that he did not "have any personal knowledge about [the operator's] accident or his disciplinary process." Id. at 156.

Taylor also contends that he was improperly terminated for the August 2016 derailment because it was the result of switch problems. See Taylor Am. Br. at 4-6, 11-12; Resp. to SEPTA Facts ¶ 75. Although there is evidence that the switch had previous problems, Taylor has not presented any evidence showing the August 2016 derailment was due to those problems, rather than the improper setting of the switch. See, e.g., Taylor Dep. at 35-38, 215-16; Schrig Dep. at 15-16, 22-23; Taylor Ex. 1, Stinson Dep. at 42-45. The union, in representing Taylor during his informal grievance hearing, did not argue that the derailment was caused by the faulty switch. See S.J. Mot., Ex. X, 9/12/2016 Letter ("Don was a finished operator and was trying to help out the Authority. He brought the car up and thought it cleared the switch."). In fact, the union admitted that the switch had not been properly set in the formal grievance hearing. See 10/13/2016 Letter ("other operators also missed the fact the switch was not set for the move").

Finally, Taylor argues that SEPTA has not discharged and/or disciplined other similarly situated non-disabled employees for their involvement in the August 2016 derailment or other derailments at the switch. See Taylor Am. Br. at 9, 12; Taylor Supp. Facts ¶¶ 101-06. Although SEPTA gave both Fear and Shaw written warnings, rather than a discharge, for the August 2016 derailment, neither employee was at the discharge disciplinary stage or on a last-chance, one-

year probationary period, like Taylor. See Fear Performance Rec.; Shaw Performance Rec. Further, although Taylor testified that Fear set the switch, SEPTA disciplined all three men because all employees were required to know the position of a switch before using or traversing them. See Resp. to SEPTA Facts ¶ 76; see also 10/13/2016 Letter (Taylor "was responsible to make sure the switch was properly set before moving the vehicles").

SEPTA did not discipline Powell because it determined that she arrived on the scene after the derailment. See Schrig Dep. at 35-36. To the extent that this finding contradicted Taylor's version of events, Taylor admitted that Powell may have avoided discipline because of a "self-protective . . . management culture" at SEPTA, rather than because of her non-disabled status. See Taylor Dep. at 235-37.

Schrig testified that other SEPTA operators, including George O'Donnell, Ed Curran, Louise Beckett, and James Chapman, were involved in split switches at the same switch and that he did not believe they were disciplined. See Schrig Dep. at 22-23. Schrig explained that SEPTA determined that these operators had properly set the switch and the split was due to the problems with the switch. See id. at 23-28. Taylor did not know whether Curran did anything wrong with regard to his switch split and he agreed that Beckett's switch split "had nothing to do with operator error." Taylor Dep. at 240-41. Taylor also did not know Beckett's performance or safety record or the details involved in Chapman's switch split. See id. at 240, 242. Taylor testified that Charmaine Burgess was involved in a switch split and never disciplined, but he did not know the circumstances related to the split or the status of Burgess's record at the time. See id. at 242-45. Absent evidence showing that those operators may have caused the switch splits by improperly setting the switch, those operators cannot be deemed substantially similar comparators to Taylor. See Anderson, 868 F. Supp. at 745. Further, even if such evidence was

9

available, those operators could not be deemed substantially similar comparators unless they were at the discharge stage of their performance record or on a last-chance one-year probationary period.  See id.  Taylor has provided no such evidence.

Because Taylor has failed to present sufficient evidence to allow a reasonable jury to find that he was discharged because of his disability, summary judgment is granted in favor of SEPTA.

An appropriate order follows.